**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRINE ROSAS, on behalf of herself and all others similarly situated, and as Private Attorney General,<br><br>    Plaintiff,<br><br>  v.<br><br>USFASTCASH; AMERILOAN; UNITED CASH LOANS; PREFERRED CASH LOANS; ONE CLICK CASH; MIAMI TRIBE OF OKLAHOMA, also known as MIAMI NATION OF OKLAHOMA; MIAMI NATION ENTERPRISES, also known as MNE; SANTEE SIOUX NATION; SFS, INC.; AMG SERVICES, INC.; AMG CAPITAL MANAGEMENT, LLC; BLACK CREEK CORPORATION; BLACK CREEK CAPITAL, LLC; BROADMOOR CAPITAL PARTNERS; HALLINAN CAPITAL CORPORATION; LEADFLASH CONSULTING, LLC; LEVEL 5 MOTORSPORTS, LLC; N.M. SERVICE CORP., formerly known as NATIONAL MONEY SERVICE; PARTNER WEEKLY LLC; PARK 269, LLC; ST. CAPITAL, LLC; THE MUIR LAW FIRM, LLC; TRIBAL FINANCIAL SERVICES; WEST FUND, LLC; SCOTT'S TRIBAL ENTITIES; SCOTT A. TUCKER; BLAINE A. TUCKER; CHARLES M. HALLINAN; CAROLYN HALLINAN; DON E. BRADY; ROBERT D. CAMPBELL; and TIMOTHY J. MUIR,<br><br>    Defendants.<br>_____/ | No. C 12-5066 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTIONS TO REMAND (Docket Nos. 45 in 12-5066 and 40 in 12-5067) AND DENYING DEFENDANTS' MOTIONS (Docket Nos. 13 and 14 in 12-5066 and 16 and 27 in 12-5067) |

| | | |
|---|---|---|
| 1 | AMY LYNNE BAILLIE, and KATHRINE ROSAS, on behalf of themselves and all others similarly situated, and as Private Attorney General, | No. C 12-5067 CW |
| 2 | | |
| 3 | | |
| 4 | Plaintiffs, | |
| 5 | v. | |
| 6 | ACCOUNT RECEIVABLE MANAGEMENT OF FLORIDA, INC., formerly known as UNITED LEGAL CORPORATION; MTE FINANCIAL SERVICES, INC.; INSTANTCASHLOANTILLPAYDAY.COM; PROCESSING SOLUTIONS, LLC; INSTANT CASH USA, INC.; FIRST EAST, INC.; RIO RESOURCES; THOMAS ASSENZIO; JOLENE HART ASSENZIO; CHARLES HALLINAN; CAROLYN HALLINAN; CLK MANAGEMENT, LLC; WEB CASH NETWORK, LLC, doing business as RIO RESOURCES; DEXTER EMERALD GROUP, LLC; AMG SERVICES, INC.; SCOTT TUCKER; BLAINE TUCKER; PROFESSIONAL RECOVERY SYSTEMS; CHECK STOP UTAH, LLC; and EAST FINCHEY, LLC, | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | Defendants. | |
| 17 | _____/ | |

Plaintiffs Kathrine Rosas and Amy Lynne Baillie move to remand these related cases to state court. Defendant Charles M. Hallinan opposes the motion to remand in Rosas v. US FastCash, Case No. C12-5066 (Rosas), and Defendant Processing Solutions, LLC (PSL), who shares counsel with Hallinan, opposes the motion to remand in Baillie v. Account Receivable Management of Florida, Inc., Case No. C12-5067 (Baillie).

Hallinan and Defendant Hallinan Capital Corporation also move to dismiss the first amended complaint in Rosas (Rosas 1AC). Defendant Thomas Assenzio moves to dismiss the third amended complaint in Baillie (Baillie 3AC). PSL and Defendants First

2

East, Inc. and Instant Cash USA, Inc. move to compel arbitration in Baillie.  Plaintiffs oppose each of these motions.

The Court took the motions under submission on the papers. Having considered the papers filed by the parties, the Court GRANTS Plaintiffs' motions to remand and DENIES Defendants' motions.[1]

BACKGROUND[2]

I. Relevant procedural history

On May 22, 2007, Plaintiff Amy Lynne Baillie initiated the Baillie action in the Alameda County Superior Court.  On March 9, 2009, PSL, First East and Instant Cash filed a motion to stay the case pending arbitration.  The trial court denied the motion, and these Defendants appealed.  On May 27, 2010, the state court of appeal affirmed the trial court's decision on the motion to stay. On June 11, 2010, these Defendants filed a petition for re-hearing before the state court of appeal, which was denied.  On July 6, 2010, these Defendants filed a petition for review in the California Supreme Court, which was denied on August 11, 2010.  On January 18, 2011, the United States Supreme Court denied PSL's petition for certiorari.

---

[1] The Court's denial of these motions is without prejudice to Defendants refiling them in state court to the extent otherwise permissible.  The Court notes that the state court has already considered and denied the motion to compel arbitration and Thomas Assenzio's motion to dismiss, Docket Nos. 16 and 27 in Case No. C12-5067, and that Defendants may be precluded from refiling these motions in state court.

[2] Defendants have objected to certain evidence offered by Plaintiffs.  The Court decides the motion without considering evidence to which Defendants have objected.  Accordingly, Defendants' objections are OVERRULED as moot.

3

On July 1, 2009, Rosas initiated the Rosas action in the San Francisco Superior Court.

On November 3, 2010, the Baillie 3AC was filed, adding Kathrine Rosas as a Plaintiff and the Assenzios as Defendants.

On January 4, 2011, Thomas Assenzio removed Baillie from state court to this Court for the first time. See Baillie v. Account Receivable Management of Florida, Inc., Case No. C11-21.

On February 14, 2011, this Court granted Plaintiffs' motion to remand Baillie to state court. See Docket No. 30 in Case No. C11-21. The Court held, "Plaintiffs' complaint does not specify the amount in controversy, and Mr. Assenzio fails to establish that it is more likely than not that the amount in controversy in this action exceeds $5 million." Id. at 10.

On October 27, 2011, the state court entered an order coordinating Baillie with Rosas and recommending that the coordinated proceedings take place in the Alameda County Superior Court. Docket No. 1-1 in Case No. C12-5066. See also Internet Lending Cases, Alameda Co. Case No. JCCP004688.

On December 5, 2011, Judge Wynne S. Carvill of the Alameda County Superior Court was appointed as the coordination trial judge. Docket No. 30-2 in Case No. C12-5067.

On July 31, 2012, the Rosas 1AC was filed, naming Hallinan as a Defendant for the first time in that action. Service was completed upon Hallinan on September 3, 2012.

On September 19, 2012, Plaintiffs filed a motion for leave to file a fourth amended complaint (4AC) in Baillie. Notice of Removal, Ex. C, Docket No. 1 in Case No. C12-5067.

4

On September 28, 2012, PSL removed Baillie to this Court. Docket No. 1 in Case No. C12-5067. On the same day, Hallinan removed Rosas to this Court. Docket No. 1 in C 12-5066. In both actions, PSL and Hallinan assert that this Court has jurisdiction under the Class Action Fairness Act (CAFA).

At the time of removal, the state court had not yet acted on Plaintiffs' motion for leave to file a 4AC in Baillie.

II. Factual allegations in Rosas

The following factual allegations are set forth in the Rosas 1AC.

Rosas collectively refers to Defendants US FastCash; Ameriloan; United Cash Loans; Preferred Cash Loans; One Click Cash; Miami Nation Enterprises; SFS, Inc.; AMG Services, Inc.; Miami Tribe of Oklahoma, also known as Miami Nation of Oklahoma; Santee Sioux Nation; Scott A. Tucker; and Blaine A. Tucker as Defendant Lenders. Rosas 1AC 2-3. Rosas alleges that Defendant Timothy J. Muir, through Defendant The Muir Law Firm, LLC, pays for the domain name registrations and other fees of multiple websites used by Defendants to market high-fee, short-term "payday" loans. Id. at ¶¶ 24, 36. The domain names include www.usfastcash.com, www.ameriloan.com, www.unitedcashloan.com and www.oneclickcash.com. Id. She further contends that the Muir Firm advertised, marketed, distributed or sold the payday loans "to consumers throughout the United States and participated in the collection of those loans." Id. at ¶ 24.

Rosas alleges that she obtained five payday loans from Defendant Lenders, on September 2, 2005, October 24, 2005, February 19, 2006 and October 24, 2006. Id. at ¶ 56. The

5

interest rate on each loan was 782.14% per annum. Id. She alleges that this rate is unconscionable under California law. Id. at ¶ 49. Over the following months, Rosas was charged and paid interest to Defendant Lenders on each of these loans and repaid all of the loans in full. Id. at ¶ 57.

Rosas alleges that Defendant Lenders utilized a standard form agreement to execute loans to members of the putative class. Id. at ¶¶ 47-49. She refers to the form as the Instant Cash Agreement and alleges Defendant Lenders used "various iterations" of this agreement. Id. Rosas accuses Defendant Lenders of charging all putative class members unconscionable and usurious rates. She alleges that Defendant Lenders advertised these loans to individuals in California, that the class members entered into the agreements while in California and that Defendant Lenders debited their bank accounts located in California to collect on the loans. Id. at ¶ 64.

Rosas further alleges that various individuals and entities received funds that can be traced to the usurious loans made by Defendant Lenders. See, e.g., id. at ¶¶ 22, 31-33. In 2010 and 2011, Hallinan Capital purportedly received from AMG at least twenty-two million dollars, "money which was obtained from the payday lending described below" in the 1AC. Id. at ¶ 32. Hallinan Capital is allegedly owned and controlled by Carolyn and Charles Hallinan, who knew of the payday lending scheme, and who personally received the twenty-two million dollars. Id. at ¶¶ 32-33.

Rosas seeks to bring various claims on behalf of a class of people "whose bank accounts . . . located in the State of

6

California [were] debited to pay on a payday loan whose annual interest rate was in excess of ten percent (10%) per annum," and who "entered into Instant Cash Agreements with Defendant Lenders and paid money to discharge the debt." Id. at ¶ 89.

On behalf of the putative class, Rosas asserts three claims against Defendant Lenders: (1) usury and/or unconscionable lending; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; and (3) money had and received. Rosas seeks monetary relief, including recovery of all interest payments made by class members during the four years prior to filing of the complaint, imposition of statutory penalties, restitution and injunctive relief.

In her fourth cause of action, Rosas seeks imposition of a constructive trust upon the Defendants, including the Hallinans and Hallinan Capital, who she alleges received "proceeds from unlawful, unconscionable and despicable usurious loans made to the Plaintiff class by the Defendant Lenders." Id. at ¶ 113. The portion of the prayer for relief related to the fourth cause of action seeks an order declaring among other things that these Defendants "hold all monies received from Defendant Lenders" as constructive trustees, and for "an accounting of all monies received by" these Defendants since July 1, 2005. Id. at 30.

III. Factual allegations in Baillie

A. Allegations made in the Baillie 3AC

Thomas Assenzio "owned, controlled, managed and/or directed" Defendants MTE Financial Services, Inc.; Instant Cash USA; Rio Resources; PSL; First East Inc.; and Instantcashloantillpayday.com. 3AC ¶ 4. All of these entity

7

Defendants conducted business as consumer lenders in California. Id. at ¶¶ 10-16. Defendant Jolene Hart Assenzio, who is Mr. Assenzio's wife, held an ownership interest in PSL and First East. Plaintiffs refer to the Assenzios and all of these entity Defendants as "Defendant Lenders." Id. at ¶ 18.

Baillie alleges that she obtained a "payday loan" for $300 from MTE Financial, doing business as Instant Cash USA, with an Annual Percentage Rate of 1,216.667%. 3AC ¶ 2 and Ex. A, at 1. A "Loan Note and Disclosure" provided the following payment terms:

> You must make one payment of $390 due on 7/14/2006, if you decline the option of renewing your loan.  If renewing is accepted, you will pay the finance charge of $90 only, on 7/14/2006.  You will accrue new finance charges with every renewal of your loan.  On your fifth renewal and every renewal thereafter, your loan will be paid down by $50 ($100 on balances over $500).  This means your account will be debited the finance charge plus $50 ($100 on balances over $500) on the due date. This will continue until your loan is paid in full.

3AC, Ex. A, at 1. Between July 14, 2006 and December 1, 2006, Baillie's checking account was debited eleven times on nine different dates, for an amount totaling $977.00. 3AC ¶ 36. On or about October 15, 2006, Baillie's loan was assigned to Defendant United Legal Corporation, predecessor in interest to Defendant Account Receivable Management of Florida (ARM). Id. at ¶ 37. On February 8, 2007, United Legal, notified Baillie that, notwithstanding her payments, $430 remained due on her loan. Id. at ¶ 38.

On or about June 19, 2006, Rosas obtained a $300 loan from Rio Resources. Id. at ¶ 3. Between June 30, 2006 and September 22, 2006, Rio Resources debited Rosas's checking account on seven different dates, for an amount totaling $825. Id. at ¶¶ 3, 40.

8

On or about November 3, 2006, Rosas obtained a $300 loan from Instant Cash USA; thereafter, Instant Cash USA debited her checking account for principal and interest payments for an undisclosed amount. Id. at ¶¶ 3, 41. The interest rates associated with her loans were usurious and unconscionable under California law. Id. at ¶¶ 3, 40, 41. With respect to her November 2006 loan, Rosas was charged interest at a rate in excess of 700 percent per annum; Rosas does not specify how much she paid on this loan. Id. at ¶ 41.

Plaintiffs seek to bring claims on behalf of themselves and a class, defined as, "All persons . . . who are residents of the State of California and entered into Instant Cash Agreements with Defendant Lenders . . . and may have been a recipient of a collection Notice from Defendant Account Receivable Management of Florida, Inc., formerly known as United Legal Corporation . . ." Plaintiffs allege that "thousands of people in California entered into Instant Cash Agreements with Defendant Lenders" and that "thousands of California consumers have been subjected to the wrongful collection actions of the Defendants ARM." Id. at ¶ 67.

In the 3AC, Plaintiffs assert claims for: (1) "usury and/or unconscionable lending," against Defendant Lenders; (2) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq., against Defendant Lenders; (3) violation of the UCL, against Defendant ARM; (4) unjust enrichment, against Defendant Lenders and Defendant ARM; and (5) an accounting, against Defendant Lenders and Defendant ARM.

On their first claim, Plaintiffs seek "a penalty equal to three times the interest paid during the year immediately prior to

the filing" of their complaint and "to cancel all future interest that Defendants claim is due." Id. at 27:18-20. They also seek "to recover all interest paid to Defendants during the two years immediately preceding the filing of" their action and to recover all interest they or putative class members paid "that is not otherwise allowed by law commencing with the date four years immediately preceding the filing" of their action. Id. at 27:20-25. Plaintiffs seek trebling of damages suffered by class members sixty-five years or older. Id. at 27:26-27.

On their second and third claims, Plaintiffs seek to enjoin Defendants from charging an interest rate in excess of the legal maximum. Id. at 28:2-5. They also seek restitution for any unlawful, unfair or fraudulent act committed by Defendants. Id. at 28:6-10.

Finally, on their fourth and fifth claims, Plaintiffs seek recovery for "all interest payments and other monies" Defendants received from them and the putative class, "commencing with the date four years immediately preceding the filing" of their action. Id. at 28:15-21. On March 11, 2011, the state court sustained a demurrer, filed by PSL, First East and Instant Cash, to the fourth and fifth causes of action, without leave to amend. Docket No. 37-3 in Case No. C12-5067.

Plaintiffs also seek attorneys' fees and costs, pursuant to California Code of Civil Procedure § 1021.5. Id. at 28:23-25.

B. Plaintiffs' motion for leave to amend

In the motion for leave to file a 4AC, Plaintiffs seek to make a number of changes to the 3AC, which include the following.

10

Plaintiffs seek to add new Defendants, including Dexter Emerald Group, alleged to be solely owned and controlled by Thomas Assenzio, and additional Defendant Lenders, among them Web Cash Network, LLC, alleged to be controlled by Thomas Assenzio and newly added Defendant Charles Hallinan. Plaintiffs seek to add an allegation "that Dexter Emerald received from Web Cash more than $6,500,000 without consideration, all of which were proceeds from the payday lending at issue in this case during the Class Period." Proposed 4AC ¶ 18.

Plaintiffs also seek to add three new causes of action to their complaint. In the new sixth cause of action to "set aside or annul fraudulent transfers," Plaintiffs seek to set aside transfers of proceeds from the payday lending in this case, including, but not limited to, "the payment by Web Cash to Dexter Emerald of more than $6,500,000.00 all of which were proceeds from the payday lending in this case." Id. at ¶¶ 99-100. In their prayer for relief related to this claim, Plaintiffs request to set aside the transfer or conveyances between Defendants "to the extent necessary to satisfy plaintiffs' judgment, plus interest." Id. at 26-27.

In the new fifth cause of action, "Plaintiffs seek imposition of a Constructive Trust as to all . . . defendants who each received proceeds from unlawful, unconscionable and despicable usurious loans made to the Plaintiff class by the Defendant Lenders." Id. at ¶ 95. In their prayer for relief related to this claim, Plaintiffs request an order declaring that these Defendants hold "all monies received from Defendant Lenders" and others as constructive trustees and "an accounting of all monies

11

received by defendants named . . . for imposition of a Constructive Trust since July 1, 2005." Id. at 26.

## LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Title 28 U.S.C. § 1447(c) provides that if, at any time before judgment, it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded. On a motion to remand, the scope of the removal statute must be strictly construed. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.; see also Wash. State v. Chimei Innolux Corp., 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.")). Courts should resolve doubts as to removability in favor of remanding the case to state court. Gaus, 980 F.2d at 566.

## DISCUSSION

I. Motion to Remand in Rosas

CAFA provides that district courts have jurisdiction over certain class actions in which the amount in controversy exceeds five million dollars. 28 U.S.C. § 1332(d)(2). The parties dispute whether it is facially apparent from the Rosas 1AC that this amount in controversy requirement has been met.

12

Hallinan contends that it is facially apparent that the Rosas 1AC puts in controversy at least twenty-two million dollars through the fourth cause of action. Rosas argues that she did not specify an amount in controversy in her prayer for relief, that she has not plead that the twenty-two million dollars relates to loans made to class members, which is limited to individuals located in California, and that Hallinan has not introduced evidence sufficient to establish by a preponderance of the evidence that the jurisdictional amount is met.

When assessing whether a removing defendant has met the amount in controversy requirement, "'[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.'" Jasso v. Money Mart Express, Inc., 2012 U.S. Dist. LEXIS 27215, at *6 (N.D. Cal.) (quoting Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)). In making this assessment, the "district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335-36 (5th Cir. 1995)). When this is not facially apparent, a "court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Id. (quoting Allen, 63 F.3d at 1335-36).

The Ninth Circuit has "identified at least three different burdens of proof which might be placed on a removing defendant in varying circumstances." Guglielmino v. McKee Foods Corp., 506

13

F.3d 696, 699 (9th Cir. 2007). First, "when a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." Id. (citing Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996)). Second, if "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing party must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. Id. (citing Sanchez, 102 F.3d at 404). Finally, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met.'" Id. (quoting Lowdermilk v. United States Bank Nat'l Assoc., 479 F.3d 994, 1000 (9th Cir. 2007).

Because of the "varying burdens of proof depending on the situation and nature of the plaintiff's complaint," the Court "must as a threshold matter determine precisely what" the Rosas 1AC alleged and in which of these three categories this case falls. Guglielmino, 506 F.3d at 699.

Resolving doubts in favor of remand, the Court concludes that it is not clear, and it is ambiguous from its face, whether the twenty-two million dollars to which the complaint refers is in controversy in the action. The pleading clearly limits the class to persons "whose bank accounts are located in the State of California." Rosas 1AC ¶ 89. In the fourth cause of action,

14

Rosas seeks imposition of a constructive trust upon Defendants who received "proceeds from unlawful, unconscionable and despicable usurious loans made to the Plaintiff class by the Defendant Lenders."  Id. at ¶ 113 (emphasis added).  She has thus explicitly limited this cause of action to proceeds from loans made to persons with bank accounts in California.  It is not facially apparent whether the twenty-two million dollars allegedly given by AMG to Hallinan Capital was limited to proceeds from such loans.  The Rosas 1AC describes this amount as being obtained from the payday lending scheme as a whole; it does not limit this scheme to California.  There are indications that it may have involved consumers throughout the United States, not just in California.  See, e.g., id. at ¶ 24.  Although the portion of her prayer for relief that is related to the fourth cause of action seeks an order declaring, among other things, that Defendants "hold all monies received from Defendant Lenders" as constructive trustees, id. at 30, without explicitly limiting the constructive trust to proceeds from loans made to class members, such a limitation is logically inferred from the limitation in the cause of action itself.  Further, if the prayer for relief sought to impose a constructive trust on proceeds beyond those actually at issue in the cause of action based on loans made to the putative class, such a request would not be legally plausible.

    Having concluded that it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," Guglielmino, 506 F.3d at 699, the Court applies the second burden of proof described above.  Accordingly, Hallinan must establish by a preponderance of the evidence that

15

the amount in controversy exceeds the jurisdictional amount. Because the first standard does not apply, Rosas need not establish to a "legal certainty" that she cannot actually recover the jurisdictional amount. Thus, Hallinan's repeated arguments that she has not done so are unavailing.

Hallinan has not submitted any summary-judgment-type evidence as to the amount in controversy. For example, he has not offered evidence that the amount transferred from AMG to Hallinan Capital represented proceeds from loans made to individuals with California bank accounts. Instead, he argues that the allegations in the Rosas 1AC constitute an admission by Rosas that the amount in controversy requirement is satisfied, and that this constitutes sufficient evidence to meet his evidentiary burden. Although a formal judicial admission by a plaintiff of such a fact may constitute sufficient evidence, Hallinan bases his argument that such an admission was actually made on his assertion that the 1AC facially discloses that twenty-two million dollars is in controversy. Having already found that the Rosas 1AC does not clearly disclose this on its face, the Court concludes that it also does not constitute such an admission.

Accordingly, Hallinan has not met his burden to establish that federal jurisdiction exists under CAFA, and the Court GRANTS Rosas's motion to remand.

II. Motion to Remand in Baillie

In Baillie, the parties dispute both whether PSL could remove the action to federal court based on the proposed 4AC before the state court had decided whether to allow it to be filed, and whether the proposed 4AC reveals that the jurisdictional amount is

16

in controversy through the fifth and sixth causes of action and the allegation related to the transfer between Web Cash and Dexter Emerald.

The Ninth Circuit has not squarely answered the question of whether the thirty day time period for removal under 28 U.S.C. § 1446(b)(3) commences when a motion for leave to amend a pleading is filed in the state court or at some other time, such when the court rules on the motion or when the amended pleading is ultimately filed. Courts considering the issue have articulated a number of different views. See 16 Moore's Federal Practice § 107.30[3][a][iv][B] (summarizing approaches). Because the Court concludes that remand is warranted, even if the proposed 4AC could serve properly as the basis for removal before the state court ruled on the motion for leave to amend, the Court does not reach this issue.

The Court has previously held that the Baillie 3AC does not specify the amount in controversy on its face. As with the Rosas 1AC, it is not clear from the face of the proposed 4AC in Baillie whether the six and a half million dollars to which it refers is in controversy under either the Baillie 3AC or the proposed 4AC, so as to constitute "other paper" under 28 U.S.C. § 1446(b)(3), as PSL argues. Neither Defendant involved in that transfer was named in the Baillie 3AC. In addition, as in Rosas, the class is limited to individuals who reside in California or whose bank accounts are located within the state. See Baillie 3AC ¶ 65; Proposed 4AC ¶ 65. Although Plaintiffs seek to prosecute only claims on behalf of a California class, neither pleading states that the payday loan scheme described only resulted in loans made

17

to putative class members or within California.  Thus, although Plaintiffs allege that the six and a half million dollars were "proceeds from the payday lending at issue in this case," Proposed 4AC ¶ 100, this does not make clear whether this sum was proceeds of the payday lending scheme as a whole, which may or may not encompass loans made to non-class members, or proceeds only of loans made to class members and in controversy.  The constructive trust claim in the proposed 4AC is similar to the corresponding claim in Rosas and clearly limits the claim to proceeds upon "loans made to the Plaintiff class."  Id. at ¶ 95.  Although the claim to set aside or annul fraudulent transfers may have been phrased more precisely, in this cause of action, Plaintiffs could seek only to set aside the transfers to the extent necessary to satisfy the claims of the named Plaintiffs and the class members.

Like Hallinan, PSL has not introduced any evidence, aside from the proposed 4AC itself, to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.  Because the proposed 4AC does not clearly disclose this on its face, it does not constitute an admission against Plaintiffs' interest in the choice of forum, as PSL contends.

Accordingly, PSL has not met its burden to establish that federal jurisdiction exists under CAFA, and the Court GRANTS Plaintiffs' motion to remand in Baillie.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motions to remand (Docket Nos. 45 in 12-5066 and 40 in 12-5067) and DENIES Defendants' motions to dismiss and compel arbitration (Docket Nos. 13 and 14 in 12-5066 and 16 and 27 in 12-5067), without prejudice

to refiling them in state court to the extent otherwise permissible.

    The Clerk shall remand these cases to the Alameda County Superior Court and close the file.

    IT IS SO ORDERED.

Dated: 12/5/2012

CLAUDIA WILKEN
United States District Judge